**Kong Min JIAN, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 1437, Docket 93–4235.

United States Court of Appeals, Second Circuit.

Argued April 14, 1994.

Decided June 27, 1994.

Stanley B. Katz, New York City, for petitioner.

Ping C. Moy, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y., Diogenes P. Kekatos, Asst. U.S. Atty., F. James Loprest, Jr., Sp. Asst. U.S. Atty., of counsel), for respondent.

Before: LUMBARD, FEINBERG, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Kong Min Jian petitions for review of an October 7, 1993 order of the Board of Immigration Appeals (BIA) denying him asylum, a waiver of deportability, and withholding of deportation, and directing him deported to China. Jian contends that the order should be reversed because (1) venue of the deportation proceedings was changed without prior notice, and (2) the BIA abused its discretion in denying his application for asylum. We agree that the change of venue was improper, but deny the petition for review because Jian was not prejudiced by the change.

I.

Jian, a native and citizen of China, entered the United States legally as a permanent resident in July 1983. His mother had entered the United States about 1978, and his father and brothers entered about 1983. With the exception of Jian's sister-in-law, who remains in China, Jian's family resides in New York City.

In June 1987, Jian was arrested and indicted in the Eastern District on three drug counts: (1) conspiring to import heroin, (2) importing heroin, and (3) possessing with the intent to distribute heroin. In July 1987, a jury convicted him on all three counts. He was sentenced to thirteen years imprisonment and five years supervised release.

On August 27, 1987, Jian began serving his sentence at the Federal Correctional Institution at Raybrook, New York. On May 19, 1988, the Immigration and Naturalization Service (INS) issued an Order to Show Cause why Jian should not be deported due to his felony conviction. Deportation proceedings commenced at Raybrook on December 12, 1988, and were adjourned to obtain a Mandarin interpreter and to allow Jian to obtain counsel. After another adjournment, the proceedings resumed on June 15, 1989, at which time Jian appeared with counsel. Jian conceded that he was deportable as charged, and the proceedings were adjourned to allow him to file an application for asylum and withholding of deportation. On July 28, 1989, Jian timely filed the application, claiming that due to his anti-communist views he would be executed or imprisoned if he returned to China. He stated that he would be singled out for punishment because he had signed a letter criticizing the government for its actions in Tiananmen Square.

For reasons not reflected in the record, there was a long delay in the deportation proceedings following the June 1989 hearing. During this delay, the INS terminated the pilot program that had allowed deportation hearings to be conducted at Raybrook. On April 13, 1993, Jian was transferred to the Federal Correctional Institution at Oakdale, Louisiana. On April 14, 1993, Acting Chief Immigration Judge Thomas L. Pullen assigned Jian's case to an Immigration Judge (IJ) in Oakdale, and mailed notice to Jian's counsel that future hearings would be conducted at Oakdale. On April 22, 1993, Jian's counsel was notified that the proceedings would resume at Oakdale on May 3, 1993.

When the proceedings resumed, Jian's counsel, who was located in Buffalo, participated by phone. The proceedings were again adjourned. When they resumed on June 21, 1993, Jian's counsel, again participating by phone, contested venue on the ground that he had not been given advance notice of the change of venue. The IJ denied

the request, finding that "the transfer reassignment of this case has been in accordance with the regulations and the law." Jian's counsel then moved to change venue to the Buffalo area on the ground that Jian's family would testify, but could not afford to travel to Louisiana. The IJ denied the motion on the ground that "[Jian] has not furnished sufficient reason to grant a change of venue at this particular time."

Jian then moved to amend the pleadings to request a waiver of deportability under § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). The IJ denied this request as a matter of law because Jian had been convicted of an aggravated felony and had been incarcerated for more than five years as a result of the conviction.

Jian testified in support of his application for asylum and withholding of deportation that he feared for two reasons that he would be imprisoned if he returned to China: (1) in June 1989, he had written a letter to a Chinese leader criticizing the Chinese government for its activities in Tiananmen Square; and (2) Jian's family members had been involved in anti-government protests before they left China.

At the conclusion of the hearing, the IJ rejected Jian's claims and ordered him deported. The IJ found that Jian was statutorily ineligible for a waiver of deportability because he had been convicted of an aggravated felony and had served five years as a result of that conviction. The IJ also found that Jian was ineligible for withholding of deportation because he had been convicted of a particularly serious crime. Finally, the IJ denied the asylum application because Jian was not eligible for asylum as he failed to establish that he had a well-founded fear of persecution, and because a grant of asylum was not appropriate as a matter of discretion due to Jian's narcotics conviction.

On June 28, 1993, Jian appealed to the BIA on four grounds: (1) the IJ improperly changed venue to Oakdale; (2) Jian's deportability was not proven by clear and convincing evidence; (3) the IJ erred in finding Jian

ineligible for a § 212(c) waiver; and (4) the IJ erred in denying Jian's request for asylum. On October 7, 1993, the BIA affirmed the IJ's oral decision and dismissed the appeal. The board found that Jian had failed to show any prejudice due to the change in venue, and that as a matter of law Jian was ineligible for withholding of deportation and § 212(c) relief. With regard to the asylum application, the BIA did not consider whether Jian had established eligibility for asylum; rather, the BIA found that even if Jian was eligible, asylum should be denied in the exercise of discretion due to the seriousness of Jian's criminal conduct.[1]

Jian appeals the BIA's decision on two grounds. First, he argues that the change of venue violated INS regulations and deprived him of his due process rights. Second, he argues that the BIA abused its discretion in denying his application for asylum. We deny Jian's petition for review.

## II.

■  The Rules of Procedure for Immigration Judge Proceedings provide that venue lies at the Office of the IJ where the charging document is filed. 8 C.F.R. § 3.20(a) (1993). Once venue is established,

> [t]he Immigration Judge, for good cause, may change venue only upon motion by one of the parties.... The Immigration Judge may grant a change of venue only after the other party has been given notice and an opportunity to respond to the motion to change venue.

*Id.* § 3.20(b). Jian correctly asserts that the IJ changed venue without complying with § 3.20(b). First, venue was not changed "upon motion by one of the parties." More importantly, Jian was not given notice of the change or an opportunity to contest the change until *after* the Immigration Judge granted the change of venue.

The INS makes several unpersuasive arguments that "at most" there was a "technical" violation of the regulation. First, they argue that Jian received notice of the change of

---

1. The BIA explicitly declined to base its decision on 8 U.S.C. § 1158(d) (Supp. V 1993)—which provides that aliens convicted of an aggravated felony may not apply for or be granted asylum— because Jian applied for asylum prior to the enactment of that subsection.

venue in a September 1989 letter, which stated that subsequent proceedings would be held at the "Bureau of Prisons." However, this letter in no way indicated that venue was being transferred from Raybrook to Oakdale.

Second, the INS argues that Jian was given ample opportunity to object once he was given notice of the change. However, § 3.20 requires notice and an opportunity to object *before* venue is changed. It is hardly adequate to provide a party with an opportunity to make an after-the-fact objection, especially since such an objection then must be made in the very venue to which the party objects.

Third, the INS argues that the change of venue was necessary because the pilot program at Raybrook was terminated and Jian had been transferred to Oakdale. Although these facts may justify the change of venue, they do not justify the failure to give prior notice.

■ We therefore find that the INS violated § 3.20 by transferring venue without prior notice. This does not end the inquiry, however. In order to obtain relief for the violation of a regulation that "does not affect fundamental rights derived from the Constitution or a federal statute," an alien must show that he or she was prejudiced by the violation. *Waldron v. INS,* 17 F.3d 511, 518 (2d Cir.1994), *petition for cert. filed,* (U.S. May 23, 1994) (No. 93–9295); *cf. Montilla v. INS,* 926 F.2d 162, 166–69 (2d Cir.1991) (requiring no showing of prejudice where INS violated own regulation regarding alien's right to counsel). Because the right to notice before a change of venue relates to "agency-created rights and privileges," *Waldron,* 17 F.3d at 518, and is not derived from the Constitution or a federal statute, Jian can obtain relief only if he shows that he was prejudiced by the violation.

Jian has failed to meet his burden. He asserts that the improper change of venue prejudiced his asylum application because witnesses from New York could not afford to fly to Louisiana to testify. He contends that if the hearing had been held at the original venue, family members would have testified that Jian would be persecuted in China, and other witnesses would have testified that there were mitigating circumstances relevant to his criminal conduct.

We find that there was no prejudice. The testimony of Jian's family might have demonstrated that Jian was a "refugee" eligible for asylum, *see* 8 U.S.C. § 1158(a) (1988), by showing that he had a "a well-founded fear of persecution" on account of his political beliefs, *see id.* § 1101(a)(42); *Gomez v. INS,* 947 F.2d 660, 663 (2d Cir.1991). However, the BIA did not deny Jian's asylum application on the ground that Jian was not eligible for asylum. Rather, the BIA exercised its discretionary power to deny asylum to eligible aliens, due to the seriousness of Jian's criminal conduct. *See* 8 U.S.C. § 1158(a); *INS v. Cardoza–Fonseca,* 480 U.S. 421, 428 n. 6, 107 S.Ct. 1207, 1211 n. 6, 94 L.Ed.2d 434 (1987). Jian therefore was not prejudiced by his inability to present testimony that he would be persecuted in China.

Although testimony about mitigating circumstances surrounding Jian's criminal conduct would have been relevant to the BIA's discretionary decision, Jian did not testify to any mitigating circumstances, and he has yet to identify a single mitigating factor or a single witness who would have testified.

The petition for review is denied.