**Wu Zheng HUANG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 02–4602–AG.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 1, 2005.

Decided: Jan. 25, 2006.

Zheng Huang ("Wu" or "Petitioner") petitions for review of a September 19, 2002 Board of Immigration Appeals ("BIA") decision summarily affirming the April 6, 1999 oral decision of an Immigration Judge ("IJ"). Wu argues on appeal that certain of the IJ's factual findings were not supported by substantial evidence, and that in any event the IJ abused his discretion in denying asylum on the basis of those findings. Respondent defends the IJ's denial of asylum on the merits, but also challenges this court's jurisdiction to hear Wu's appeal, arguing that Wu failed to exhaust an automatic right to BIA reconsideration of an IJ's discretionary denial of asylum, see 8 C.F.R. § 1208.16(e)[1]. We hold that Wu has exhausted his administrative remedies, grant the petition for review, and affirm in part and vacate and remand in part the BIA's decision.

## BACKGROUND

Petitioner Wu, a native and citizen of the People's Republic of China, entered the United States illegally and was immediately detained by immigration authorities at Brownsville, Texas. He conceded removability, but sought asylum and withholding of removal pursuant to the Immigration and Nationality Act (INA), §§ 208(b)(1), 241(b)(3)(A), as amended, 8 U.S.C. §§ 1158(b)(1), 1231(b)(3)(A).

In his application for asylum and at his hearing before the IJ, Wu offered credible testimony corroborated by medical and documentary evidence to show that in 1990, after the birth of his second child, he was forcibly subjected to a vasectomy by

Steven A. Mundie, Baron & Mundie, P.C., New York, N.Y., for Petitioner.

Robert David Rees, Assistant United States Attorney, for Kevin V. Ryan, United States Attorney for the Northern District of California (Hannah Horsley, Assistant United States Attorney, on the brief), San Francisco, Cal. for Respondent.

Before: NEWMAN, CALABRESI and STRAUB, Circuit Judges.

CALABRESI, Circuit Judge.

In this unusual case involving a denial of asylum as a matter of discretion, Wu

---

**1.** As applied to the BIA, 8 C.F.R. § 208.16(e), upon which Respondent rested its arguments, is actually designated at 8 C.F.R. § 1208.16(e), as a result of the enactment of the Homeland Security Act of 2002, Pub.L. 107–296, tit. IV, subtits. D,E, F, 116 Stat. 2135, 2192 (Nov. 25, 2002) (as amended) and the promulgation of final rule 68 Fed.Reg. 9824–01, effective February 28, 2003.

Chinese family planning authorities.[2] Wu also testified that after his sterilization, he became politicized about family planning policies in China, and that he came into conflict with the head of his village on the subject and spoke openly about his views. The first incident of confrontation over the policies, according to his testimony and I–589 application, occurred when Wu's son, then nine years old, vocally objected to a film he was shown in school regarding the patriotism of Chinese family planning policy. Wu attested that the head of his village summoned Wu, informed him that anti-governmental views and parental teachings would not be tolerated, and threatened to arrest him if he continued to speak out. Wu objected, saying that the government lacked respect for human rights by forcing sterilizations. Wu also testified that one year later he had a second, similar confrontation with the village head, and he began to oppose publicly the family planning policy. Wu's written application, however, did not mention this second confrontation or his public opposition.

"[O]n the whole," the IJ found Wu to be credible "up to a point." The IJ believed, based on medical evidence from an American physician and a Chinese sterilization certificate, that Wu had been forcibly sterilized pursuant to Chinese family planning policy. The IJ stated: "He has testified that he was forced to be sterilized and I believe him." He found that Wu "estab-

lished that he has a well-founded fear of persecution within the meaning of our laws," and was therefore eligible for asylum. *See* 8 U.S.C. § 1101(a)(42) (as amended by Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, § 601(a)(1), 110 Stat. 3009–689) (granting per se eligibility for asylum based on forced sterilization). The IJ also found that Wu had met his burden with respect to withholding of removal to China.

The IJ refused, however, to exercise his discretion to grant Wu asylum. He found that Wu had attempted to "deceive the Court" by embellishing his claims. Specifically, the IJ stated (1) that Wu mentioned two clashes with the village head in his testimony, while his I–589 application for asylum had implied that there had been only one such encounter; (2) that Wu embellished or fabricated testimony regarding his public opposition to family planning (this finding was based on the fact that Wu had not mentioned this activity in his written asylum application); and (3) that Wu made up testimony regarding a one-month hiding period within China prior to leaving the country. In addition to this credibility-related concern, the IJ noted as a second "adverse factor" that Wu had used a professional smuggler to leave China.[3] The IJ repeatedly emphasized that his decision on the asylum claim was made "as a matter of discretion."

**2.** Wu testified that after the birth of his first child, his wife was subjected to involuntary insertion of an intrauterine device ("IUD"). Wu's wife became pregnant again in 1989 in spite of the IUD, and she went into hiding to protect her pregnancy. Wu registered this second child after its birth, and the authorities informed Wu that his wife was required to report for sterilization within five days. She returned to hiding. When she did not report for the procedure, government officials came to the couple's home. Unable to locate

Wu's wife, they instead arrested Wu and took him to a hospital for a forced vasectomy. Wu testified that he could not work for three months after the procedure, which had "scarred [him] mentally." The IJ did not contest the credibility of this testimony.

**3.** The record does not indicate if the smuggler, who was in China, aided Wu's entry into the United States or just coordinated his exit from China and his transit to the border.

Petitioner appealed, and on September 19, 2002, the Board of Immigration Appeals affirmed the IJ's decision without opinion. Wu filed a timely petition for review. He did not seek reconsideration of either the IJ's or the BIA's orders.

## DISCUSSION

This case presents two primary issues. First, we consider whether a failure to exhaust what, arguably, is an automatic right to BIA reconsideration of an IJ's discretionary denial of asylum, *see* 8 C.F.R. § 1208.16(e), denies this court jurisdiction over a petition for review. Second, we address (a) whether, on the facts, the IJ's partial adverse credibility finding was supported by substantial evidence, and (b) whether the IJ properly relied on that finding and on Wu's use of a smuggler as a basis for denying asylum as a matter of discretion. Discretionary denials of asylum are exceedingly rare. Neither side has presented (nor have we found) a case involving a jurisdictional challenge under 8 C.F.R. § 1208.16(e), or an exercise of agency discretion to deny asylum based on factual findings like those in the case before us.[4]

The government does not now challenge, and we accordingly affirm, the agency's conclusion that Wu made a sufficient showing of a well-founded fear of persecution to warrant withholding of removal to China and to establish *eligibility* for asylum.

### 1. Exhaustion Requirements in Light of 8 C.F.R. § 1208.16(e)

Federal regulations provide special and unusual rights to an alien who has been denied asylum, on a discretionary basis, where that denial will preclude the alien from admitting his/her spouse or minor children:

> Reconsideration of discretionary denial of asylum. In the event that an applicant is denied asylum solely in the exercise of discretion, and the applicant is subsequently granted withholding of deportation or removal under this section, thereby effectively precluding admission of the applicant's spouse or minor children following to join him or her, the denial of asylum shall be reconsidered. Factors to be considered will include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country.

8 C.F.R. § 1208.16(e). Respondent argues that this language is mandatory, obliging an alien covered by the regulation to move for reconsideration by the BIA. Thus, the government argues, since Petitioner failed to bring a motion to reconsider within thirty days of the agency decision, he did not exhaust his obligation to seek "all possible relief" within the administrative agency before seeking federal judicial review. *See* 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right").

Respondent's contention ignores the significance of some key language in the regulation. That language mandates reconsideration when an applicant is granted withholding "subsequently" to a discretionary denial of asylum. As such, the language would most reasonably be read to apply to situations (unlike the one before us) in which the BIA had affirmed a discretionary denial of asylum, and *subsequently* (for whatever reasons, perhaps

---

4. We have, however, found one case that comes close in several respects, *see Kalubi v. Ashcroft*, 364 F.3d 1134 (9th Cir.2004), discussed *infra*.

new facts or circumstances), the alien was granted withholding of removal.[5] In such situations, the regulation would appear to require the BIA to revisit its discretionary decision as to asylum, in order to facilitate family reunification.

■ In the case before us, the IJ denied asylum and granted withholding of removal in the same decision. As a result, reconsideration in the light of that grant would arguably not be mandated, and Petitioner would not have failed to take advantage of an available immigration remedy. But, even apart from this plausible reading of the regulation, and assuming away, arguendo, the significance of the word "subsequently" in the text, we conclude that Petitioner has met all relevant exhaustion requirements.

Respondent's argument hinges on an interpretation of 8 C.F.R. § 1208.16(e) that would place a duty solely on the petitioner to move for reconsideration, as opposed to requiring the BIA (or the IJ for that matter) to reconsider any denial of asylum *sua sponte*. *Compare* 8 C.F.R. § 1003.2(b) (describing the requirements of filing a motion to reconsider, including a thirty-day filing window following the contested agency decision) *with* 8 C.F.R. § 1003.2(a) ("The Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."). *See also Li Yong Zheng v. U.S. Dep't of Justice*, 416 F.3d 129, 130 (2d Cir.2005) (per curiam) ("[T]he BIA has the authority to reopen any case at any time sua sponte."). But Respondent's reading of 8 C.F.R. § 1208.16(e) would convert what is manifestly a law designed to further the reunification of families into an additional burden on a petitioner (to move formally for a reconsideration pursuant to 8 C.F.R. § 1003.2(a)). In effect, rather than allowing a normal BIA appeal from a legally erroneous discretionary denial of asylum, it would set a procedural trap in the way of such an appeal in those very cases that the regulation is most concerned with—situations in which a discretionary denial of asylum resulted in family separation.[6]

We disagree with this overly restrictive reading of the regulation. On its face, the language of § 1208.16(e) instructs the BIA, not a petitioner, of its duties. It states that "the denial of asylum *shall be reconsidered*" (emphasis added), and does so in the passive voice. Read normally, the passive voice in such a phrase mandates action by the party which previously had acted, *i.e.*, the BIA. But even apart from that ordinary reading, the rule does not specify the mechanism that initiates review—*i.e.*, by motion, through direct appeal, or as a result of the BIA's own initiative. It follows that Respondent's reading—that § 1208.16(e) requires a timely motion made by the alien pursuant to 8 C.F.R. § 1003.2(b)—finds no support whatsoever in the text of the regulation.

Not only does ordinary *textual* analysis run counter to Respondent's reading of the

**5.** *See, e.g., Andriasian v. INS*, 180 F.3d 1033 (9th Cir.1999) (reviewing a grant of withholding of removal *by the BIA* after *an IJ* had denied asylum as a matter of discretion).

**6.** Normally, a petitioner can choose whether to file a motion to reconsider in addition to or in lieu of a direct agency appeal, and the federal courts of appeal may consider the initial agency decision and any subsequent denial of reconsideration separately or in a consolidated petition for review. *See Khouz-* *am v. Ashcroft*, 361 F.3d 161, 167 (2d Cir. 2004) (holding that, in light of *Stone v. INS*, 514 U.S. 386, 394, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995), a petitioner may file a motion to reconsider an agency decision with the BIA after filing a petition for judicial review of the same agency decision, and need not petition the court to consolidate review of the motion to reconsider and of the underlying agency action).

regulation, so do *contextual* considerations. For, as mentioned above, reading 8 C.F.R. § 1208.16(e) as a jurisdictional bar if a petitioner fails to move for reconsideration would have the perverse effect of creating a special procedural barrier for the very group to whom Congress sought to give added protection. The regulation expressly acknowledges a particular concern raised by some discretionary denials of asylum when withholding of removal is granted. The concern focuses on the fact that in such cases, an applicant's spouse or minor children will be precluded from joining the applicant. It would contort this special concern to hold that 8 C.F.R. § 1208.16(e) imposes on covered persons the duty to make a mandatory motion, even where the BIA has the authority, in the absence of such a motion, *sua sponte* to satisfy its statutory obligation to reconsider, and where—in the ordinary course of things—a reviewing court would have the capacity, on appeal by the applicant, to require the BIA to reconsider.

Our reading of the regulation by no means relieves petitioners in Wu's position of ordinary exhaustion requirements. Such exhaustion is, of course, still mandatory. *See* 8 U.S.C. § 1252(d); *Foster v. INS*, 376 F.3d 75, 77 (2d Cir.2004) (per curiam). We simply hold that a petitioner's duty to exhaust administrative relief under 8 U.S.C. § 1252(d) is unchanged, rather than amplified, by the terms of 8 C.F.R. § 1208.16(e). Thus, a petitioner fulfills the duty to exhaust administrative relief under 8 U.S.C. § 1252(d) by appealing the IJ's exercise of discretion to the BIA. Wu did just that: he argued to the BIA that "the IJ abused his discretion in not granting asylum to the Respondent after he found that the Respondent credibly testified about his forced sterilization." Therefore, his contention was clearly presented to the BIA. *See Foster*, 376 F.3d at 78 ("[W]e require petitioner to raise *issues*

to the BIA in order to preserve them for judicial review.") (internal quotation mark and alternation omitted).

Petitioner sought administrative review of a discretionary denial of asylum using one of the appeal mechanisms available to him when he appealed the IJ's decision to the BIA. By doing so, he allowed the agency to fulfill its duty under 8 C.F.R. § 1208.16(e) to reconsider the denial with attention to "the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country." By affirming the IJ's discretionary denial, the BIA exercised its own discretion and "independent judgment," making the decision of the IJ its own. *See In re Burbano*, 20 I. & N. Dec. 872, 873 (BIA 1994) (holding that when considering the discretionary decision of an immigration judge, the BIA "issue[s] a discretionary decision independent from that of the immigration judge," rather than employing an abuse of discretion standard). Petitioner now seeks review of the BIA's refusal to reverse the IJ's discretionary denial of asylum. We hold that no exhaustion issues deprive us of jurisdiction to hear his petition.

### 2. The IJ's Discretionary Denial of Asylum

■■■ To establish eligibility for asylum, a petitioner must show that he satisfies the statutory definition of a "refugee," *i.e.*, that he has suffered past persecution on account of race, religion, nationality, membership in a particular social group, or political opinion, or that he has a well-founded fear of future persecution on one of these grounds. 8 U.S.C. § 1101(a)(42); *Jin Shui Qiu v. Ashcroft*, 329 F.3d 140, 148 (2d Cir.2003). If an applicant establishes past persecution, he triggers a rebuttable presumption of a well-founded

fear of persecution and thus of eligibility for asylum; or, if he establishes a well-founded fear of future persecution, he is automatically eligible for asylum. *See Li Yong Cao v. U.S. Dep't of Justice*, 421 F.3d 149, 155 (2d Cir.2005). In cases involving persecution through forcible sterilization or abortion, the BIA has held that because these acts are "permanent and continuous," they trigger an irrebuttable presumption of a well-founded fear of future persecution and thus conclusively establish eligibility for asylum. *See id.; In re Y–T–L–*, 23 I. & N. Dec. 601, 605–08 (BIA 2003). "Once an applicant demonstrates eligibility for asylum, however, the decision whether to grant a particular application is ... within the discretion of the Attorney General." *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir.2000) (internal quotation mark omitted); *see also* 8 U.S.C. § 1158(b)(1).

 Entitlement to withholding of removal, a mandatory form of relief, requires an applicant to satisfy a higher burden. The applicant must show that it is more likely than not that, if deported, his life or freedom would be threatened on account of one of the five bases for asylum. *See* 8 U.S.C. § 1231(b)(3); *Diallo*, 232 F.3d at 284–85. In conformity with United States obligations under international human rights law, *see INS v. Cardoza–Fonseca*, 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), the BIA *must* withhold deportation if the applicant meets the higher standard of eligibility for withholding of deportation.[7] *See Osorio v. INS*, 18 F.3d 1017, 1032 (2d Cir.1994); *see also* 8 U.S.C. § 1231(b)(3)(A). "An applicant who proves that he or she is eligible for asylum, but is denied asylum in the BIA's exercise of discretion, remains eligible for withhold-

ing of deportation." *Osorio*, 18 F.3d at 1033.

A petitioner who proves persecution to the degree warranting withholding of removal, but who has been denied asylum in the IJ's exercise of discretion, is placed in an unusual legal status. One practical effect of this status is that the refugee is not eligible to become a lawful permanent resident, pursuant to 8 U.S.C. § 1159(a), as an asylee; and hence, his spouse or children cannot enter the United States, pursuant to 8 U.S.C. § 1158(b)(3)(A), as derivative asylees. Furthermore, withholding of removal is a "country-specific" form of relief, *i.e.*, it bars removal to the nation of persecution, but it does not prevent exclusion and deportation to a hospitable third country. *See Cardoza–Fonseca*, 480 U.S. at 428, n. 6, 107 S.Ct. 1207.

In this appeal, Wu challenges the IJ's exercise of discretion on two grounds. First, Wu argues that the IJ's partial adverse credibility finding, which provided one foundation for the IJ's denial of asylum, was not supported by substantial evidence. Second, and regardless of our disposition of the first question, Wu contends that the IJ erred as a matter of law both in relying on the stated grounds for exercising discretion and in failing to balance the equities as required for the exercise of discretion.

### a. The Adverse Credibility Finding

 Factual findings underlying the IJ's discretionary decision are entitled to deference if they are supported by substantial evidence, *see, e.g., Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir. 2004), and an IJ's credibility determinations are entitled to "particular deference,"

---

7. There are certain statutory exceptions to this rule, none of which are relevant here. *See* 8 U.S.C. § 1231(b)(3)(B) (enumerating exceptions to withholding of removal where the

Attorney General determines that the alien has persecuted others, committed certain crimes, or poses a danger to national security).

*see, e.g., Wu Biao Chen v. INS,* 344 F.3d 272, 275 (2d Cir.2003) (per curiam).

The IJ found Wu credible with respect to the entire content of his I–589 application—*i.e.,* his forced vasectomy by Chinese authorities, his son's anti-governmental speech in school, and his confrontation with the village head on one occasion as a result of Wu's opposition to family planning policy. On that basis, the IJ found Wu to be the victim of government sterilization, and hence statutorily eligible for asylum. *See* 8 U.S.C. § 1101(a)(42). He also found, however, that in Wu's oral testimony at his asylum hearing, Wu had embellished the story of his persecution. Specifically, the IJ concluded that Wu had falsely increased the number of times that he was confronted by the village head, had overstated the degree of his opposition to family planning policies, and had made up the account of disappearing into hiding for one month prior to leaving China. Wu argues that these latter findings of adverse credibility were not in fact inconsistent with his I–589 application (which was simply more general in nature) and that, in any case, they amounted to collateral or ancillary inconsistencies within the meaning of *Secaida–Rosales v. INS,* 331 F.3d 297, 308 (2d Cir.2003).

We have serious doubts about whether the IJ's partially adverse credibility finding was supported by substantial evidence of inconsistencies, and whether the alleged testimonial inconsistences that the IJ identified could justify a finding of lack of credibility, under *Secaida–Rosales.* Moreover, we might reasonably question the propriety of parsing the legal significance of Wu's testimony as this IJ did, rendering the same nexus of facts credible for purposes of eligibility for asylum, but significantly not credible for purposes of a discretionary denial of asylum. *Cf. Kalubi v. Ashcroft,* 364 F.3d 1134, 1138–39 (9th Cir. 2004) (holding that the agency abused its discretion in denying asylum to an eligible alien because "if an applicant's testimony on a particular issue is not found incredible for purposes of determining whether he is eligible for asylum, it must be taken as true—and cannot be found incredible—on the same issue for purposes of determining whether he is entitled to asylum"). Nevertheless, we decline to reach these questions, and we will, instead, assume, arguendo, that the IJ's credibility determination is supported by the record. But, as discussed *infra,* we conclude that the IJ relied improperly on this narrow adverse credibility determination in making his discretionary decision on asylum.

### b. The IJ's Exercise of Discretion

Judicial review of discretionary decisions to grant or deny asylum is governed by 8 U.S.C. § 1252(b)(4)(D), which provides that: "the Attorney General's discretionary judgment whether to grant relief under section 1158(a) of this title shall be conclusive unless manifestly contrary to the law and an abuse of discretion."[8] *See, e.g., Li Yong Cao v. U.S. Dep't of Justice,* 421 F.3d 149, 155 (2d Cir.2005); *Gilaj v. Gonzales,* 408 F.3d 275, 288 (6th Cir.2005); *Etchu–Njang v. Gonzales,* 403 F.3d 577, 580 (8th Cir.2005); *Sepulveda v. U.S. Attorney Gen.,* 401 F.3d 1226, 1231 (11th Cir.2005); *Kalubi v. Ashcroft,* 364 F.3d 1134, 1137 (9th Cir.2004). Congress added 8 U.S.C. § 1252(b)(4)(D) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA),

---

**8.** It is not clear whether "manifestly contrary to law and an abuse of discretion" represent parallel statements of the same standard or constitute separate standards. For reasons that follow, we do not find it necessary to decide this question.

Pub.L. 104–208, 110 Stat. 3009–608 (1996).[9]

■ The IJ based his discretionary denial of asylum on two findings. First, he found that Wu had embellished or fabricated aspects of his testimony, and second, that Wu had used a professional smuggler to leave China. Petitioner argues that these adverse factors were insufficient as a matter of law to warrant a discretionary denial of asylum, and that the IJ failed to take into account significant equities favoring a grant of asylum in his case. We agree.

Recognizing the special nature of asylum cases, the BIA has established—and federal courts have enforced—extensive limita-

tions on an IJ's exercise of discretion in the context of asylum-eligible refugees. *See, e.g., Kalubi,* 364 F.3d at 1138–39; *Andriasian,* 180 F.3d at 1044–47; *Castro–O'Ryan v. INS,* 847 F.2d 1307, 1314 (9th Cir.1988); *Shahandeh–Pey v. INS,* 831 F.2d 1384, 1387–89 (7th Cir.1987); *In re Fauziya Kasinga,* 21 I. & N. Dec. 357, 367 (BIA 1996); *In re H-,* 21 I. & N. Dec. 337, 348 (BIA 1996); *In re Chen,* 20 I. & N. 16, 19 (BIA 1989).[10]

■ Procedurally, an applicant for asylum bears the burden of establishing that the favorable exercise of discretion is warranted, but either party may proffer evidence relevant to any discretionary aspects of the case. *See In re H-,* 21 I. & N. Dec.

9. The provision in 8 U.S.C. § 1252(b)(4)(D) refers to 8 U.S.C. § 1158(a), which governs the circumstances under which aliens may apply for asylum. Section 1158(a) says nothing about the authority of the Attorney General to grant asylum, or the "discretionary judgment whether to grant relief" to which 8 U.S.C. § 1252(b)(4)(D) refers. This anomaly is likely explained by the fact that prior to the enactment of IIRIRA in 1996, § 1158(a) did include a reference to the Attorney's General's discretionary authority to grant asylum. *See* 8 U.S.C. § 1158(a) (1994) (providing that "the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien in a refugee ...."). In 1996, Congress amended section 1158(a) by, *inter alia,* splitting its text into sections 1158(a) and 1158(b). *See* IIRIRA, 110 Stat. at 3009–691–692. Section 1158(b) now contains the language concerning the Attorney General's discretion to grant asylum:

> The Secretary of Homeland Security or the Attorney General may grant asylum to an alien who has applied for asylum in accordance with the requirements and procedures established by the Secretary of Homeland Security or the Attorney General under this section if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title.

8 U.S.C. § 1158(b)(1)(A).

One can only conclude, as we and other circuits have implicitly done, that the drafters of 8 U.S.C. § 1252(b)(4)(D) intended to refer to section 1158(b) when they promulgated the standard of review governing the Attorney General's discretionary judgment whether to grant asylum. Applying the standard of review in 8 U.S.C. § 1252(b)(4)(D), therefore, the discretionary denial of asylum in Wu's case is "conclusive unless manifestly contrary to the law and an abuse of discretion." *See* 8 U.S.C. § 1252(b)(4)(D). While this circuit has yet to define precisely what "manifestly contrary to law" means, we have held that "[a]n abuse of discretion may be found in those circumstances where the Board's decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements; that is to say, where the Board has acted in an arbitrary and capricious manner." *Ke Zhen Zhao v. U.S. Dep't of Justice,* 265 F.3d 83, 93 (2d Cir.2001) (internal citations omitted).

10. Aspects of the BIA case law on this issue—specifically, instructions that IJs should take into account persecution of others, certain types of criminal conduct, dangers to national security, and firm resettlement in third countries—have now been made mandatory bars to asylum, by statute. *See* 8 U.S.C. § 1158(b)(2). The remaining aspects of the case law guiding an IJ's exercise of discretion, however, remain unaffected by these legislative changes.

at 348. Thus, after an IJ determines that past persecution has been established, "the regulations envision that he or she ordinarily will proceed to accept further evidence" concerning discretionary relief. *Id.* In the case before us, after finding that Wu was eligible for asylum, the IJ invoked his discretion to deny asylum without taking any further evidence. Nothing in the federal regulations specifically mandates a bifurcated proceeding, however. Therefore—at least on the record before this IJ, which already included the applicant's positive equities—the IJ's failure to invite new evidence was not, in and of itself, improper.

It was the substantive bases of the IJ's decision, rather than its procedural aspects, that were contrary to law in Wu's case. In making the substantive determination of whether an alien qualifies for a discretionary grant of asylum, the immigration agency must examine the totality of the circumstances. *See In re H-,* 21 I. & N. Dec. at 347; *see also In re A–H–,* 23 I. & N. Dec. 774, 782–83 (Att'y Gen.2005) (evaluating all the circumstances, including equities favoring the petitioner, informing a discretionary decision on asylum); *In re Chen,* 20 I. & N. Dec. at 19 (stating that

"as with any case involving the exercise of discretion, all other factors, both favorable and adverse, should also be considered, with recognition of the special considerations present in asylum cases").

In discussing the balancing of favorable and adverse factors, the BIA has stated that "[t]he *danger of persecution* will outweigh all but the most egregious adverse factors." *Id.* (emphasis added); *see also In re Kasinga,* 21 I. & N. Dec. at 367 (citing *In re Pula,* 19 I. & N. Dec. 467, 474 (BIA 1987) (superseded by regulation on other grounds)). The *actual experience* of past persecution should also weigh in favor of a grant of asylum.[11] *See In re Chen,* 20 I. & N. Dec. at 19. Other favorable considerations include "general humanitarian reasons, independent of the circumstances that led to the applicant's refugee status, such as his or her age, health, or family ties." *In re H-,* 21 I. & N. Dec. at 347–48. Adverse factors include criminal convictions, as well as significant violations of national immigration laws and the manner of entry into this country. *See In re Pula,* 19 I. & N. Dec. at 473; *Jian v. INS,* 28 F.3d 256, 259 (2d Cir.1994).

11. The BIA emphasized the importance of the danger and actual experience of persecution in cases in which the government had attempted to rebut, based on changed country conditions, the presumption of a well-founded fear of persecution that had arisen as a result of a petitioner's showing of past persecution. In the instant case, instead, Wu was entitled—by federal legislation and by BIA holdings—to an *irrebuttable* presumption of a well-founded fear of future persecution on account of his forcible sterilization. *See Li Yong Cao,* 421 F.3d at 155. But this distinction in no way changes the applicability of the rule that makes past persecution a major factor favoring asylum. Indeed, the BIA has explicitly stated that weighing this factor in the discretionary equation is based on a "general humanitarian principle" favoring asylum for "a person who—or whose family—has suffered

under atrocious forms of persecution." *See In re Chen,* 20 I. & N. Dec. at 19. Thus, Wu's showing of persecution as a result of his forced sterilization constituted an important factor favoring asylum.

The government might seek to counter this reasoning by arguing that the danger of future persecution or the experience of past persecution become irrelevant where the agency has granted withholding of removal. But the government's position would yield a bizarre result (and one which is in conflict with *In re Chen* ). For, if one accepted this position, those very asylum-seekers who met the higher standard of proof of persecution required for withholding of removal (and thus those persons most in need of this nation's asylum relief) would be the ones who received less protection.

The IJ in Wu's case entirely failed to undertake the examination of the totality of the circumstances as mandated by the case law. He focused solely on Wu's alleged "embellishments" and on Wu's use of a snakehead. The failure to weigh the relevant factors was thus manifestly contrary to law and would, together with the abuse of discretion it reflected, give us jurisdiction to review the IJ's discretionary denial of asylum. *See* 8 U.S.C. § 1252(b)(4)(D). Moreover, when such a review is undertaken, the failure to balance, by itself, justifies a vacatur of the IJ's denial and a remand for a proper balancing of the equities. *See Kalubi,* 364 F.3d at 1140–41 (remanding a discretionary denial of asylum where an IJ failed to consider the alien's past persecution, fear of future persecution, and separation from his spouse, as well as his membership in a secret police organization); *Castro–O'Ryan,* 847 F.2d at 1314 (remanding an agency denial of asylum to a criminal alien where the agency failed to take into account counterveiling equities); *Shahandeh–Pey,* 831 F.2d at 1387–89 (vacating and remanding where the BIA failed to consider possible evidence of the petitioner's family ties, employment history, good character, property, and duration of residence in the United States, which might have outweighed his several prior criminal convictions).

While a remand is therefore appropriate, and while, on remand, the requisite balancing must be made by the BIA, we would be remiss if we did not note the weight on Wu's side of the balance, at least on the record currently before us. The IJ identified two adverse factors, and the IJ's handling of each is problematic. First, the IJ found that Wu had exaggerated certain peripheral aspects of his testimony. But as we have said—speaking of inconsistencies and omissions, such as the ones here found by the IJ—in the context of eligibility for asylum, "the circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding," and thus, "holding applicants to such a standard is not only unrealistic but also unfair." *Secaida–Rosales,* 331 F.3d at 308. And, it need hardly be observed that if testimonial embellishment at the margins, by a proven refugee, were sufficient to justify a denial of asylum, there would be few asylees indeed.

Secondly, the IJ stated that he "[took] note of the fact" that Wu had paid a smuggler $30,000 to leave China and come to the United States. The manner of entry into the United States, or the circumvention of orderly refugee procedures abroad, is indeed one of the factors that can be weighed adversely in the exercise of agency discretion. *See In re H-,* 21 I. & N. Dec. at 348; *In re Kasinga,* 21 I. & N. Dec. at 368; *see also In re Pula,* 19 I. & N. Dec. at 473. Such consideration, however, should be made in light of the full circumstances of an alien's flight. *See In re Pula,* 19 I. & N. Dec. at 473–74. The record in this case, as currently before us, is unclear as to whether Wu's entry into the United States was fraudulent, and it does not suggest that Wu was eligible for orderly refugee procedures in China or elsewhere. All that the record shows, is (a) that Wu paid a snakehead $30,000 to exit China and to travel to the United States, (b) that he came in "somewhere near Brownsville, Texas," and (c) that Wu was taken into custody immediately upon entry at the southern border and that he conceded removability forthwith.

The BIA has explicitly cautioned that manner of entry cannot, as a matter of law, suffice as a basis for a discretionary denial of asylum in the absence of other adverse factors. *See In re Pula,* 19 I. &

N. Dec. at 473–74 (holding that fraud should be considered only as one of a number of factors and reversing the prior position of the BIA that fraudulent entry was nearly a *per se* grounds for a discretionary denial of asylum). Moreover, the BIA has also held that quick admission of removability (such as that made by Wu) mitigates the negative impact of the manner of entry, even where the use of fraudulent documents during transit is at issue. *See In re Kasinga,* 21 I. & N. Dec. at 368 (reversing an IJ's discretionary denial of asylum where the applicant had purchased a fraudulent passport to enter the United States, but admitted its falsity to an immigration inspector at the border).

As with peripheral embellishments, if illegal manner of flight and entry were enough independently to support a denial of asylum, we can readily take notice, from the facts in numerous asylum cases that come before us, that virtually no persecuted refugee would obtain asylum. It follows that Wu's manner of entry, on the facts in this record, could not bear the weight given to it by the IJ.

In considering the factors influencing the IJ's exercise of discretion, we emphasize that unlike applicants as to whom discretionary denials of asylum have been upheld by courts of appeals, Wu was not a criminal alien nor aligned in any way with terrorism.[12] Even in those circumstances, however, a balancing of the equities for and against a petitioner is required.[13]

Conversely, the factors in Wu's favor on the discretionary scale are weighty indeed. First, as the IJ found, Wu was a victim of forced sterilization, a form of past persecution that amounts to on-going persecution. As the BIA has said, past persecution or the danger of future persecution can overcome all but the strongest adverse factors. *See In re H-,* 21 I. & N. Dec. at 348 (internal citations and quotations omitted); *In re Chen,* 20 I. & N. at 19.

Second, denial of asylum, paired with the reasons that underlay the granting of withholding of removal, would likely have the practical effect of separating Wu from his wife and children.[14] Denial of asylum

**12.** In the only discretionary denial of asylum to have come before this court—in which we evaluated an IJ's exercise of discretion in order to determine whether an improper change of venue resulted in prejudice—we stated that an IJ would have been within his discretion to deny asylum where the "seriousness of [petitioner's] criminal conduct," *i.e.,* a felony conviction for a heroin distribution conspiracy, was not counterbalanced by any mitigating circumstances or witnesses. *Jian,* 28 F.3d at 258; *see also Sheikh v. Gonzales,* 427 F.3d 1077, 1078–80 (8th Cir.2005) (denying a petition for review of an IJ's discretionary denial of asylum where the IJ had based his decision on the petitioner's conviction for a crime of moral turpitude in the United States); *Kazlauskas v. INS,* 46 F.3d 902, 907 (9th Cir.1995) (upholding a discretionary denial of asylum in a case involving two prior convictions in the United States).

**13.** *See Jian,* 28 F.3d at 259 (stating that "testimony about mitigating circumstances sur-

rounding [the] criminal conduct would have been relevant to the BIA's discretionary decision"); *Kazlauskas,* 46 F.3d at 907 (finding that in addition to considering the petitioner's criminal record in the United States, the IJ had properly considered a wide range of both favorable and unfavorable factors in the petitioner's circumstances.)

**14.** It is possible that in the particular circumstances of Wu's case, his wife would be eligible, on fleeing China, to apply for asylum herself, as the spouse of a person who had been forcibly sterilized. *See In re C–Y–Z–,* 21 I. & N. Dec. 915, 918 (BIA 1997). But such flight is not always easy, and if we were to uphold the IJ today, another IJ might, on grounds similar to those applied to Wu, deny his wife asylum. Moreover, Wu's children are not, under the law of this circuit, eligible for asylum, *"per se,"* as the children of a person forcibly sterilized. *See Shao Yan Chen v. U.S. Dep't of Justice,* 417 F.3d 303, 305 (2d Cir.2005) (per curiam).

bars Wu's wife and children from joining him in the United States as derivative asylees pursuant to 8 U.S.C. § 1158(b)(3)(A). And the circumstances justifying withholding of removal would, for obvious reasons, preclude Wu's return to China to reunite with his family. Family reunification has been expressly recognized as a crucial factor in weighing asylum as a discretionary matter. *See In re H-*, 21 I. & N. Dec. at 347–48 (recognizing that family ties are among the general humanitarian concerns that must be taken into account). Indeed, the federal regulation mandating reconsideration of discretionary denials of asylum explicitly recognizes the undesirability of family divisions attendant to a discretionary denial of asylum, and provides an added tier of protection in such circumstances. *See* 8 C.F.R. § 1208.16(e) (reconsideration of discretionary denials of asylum is required because such decisions "thereby effectively preclud[e] admission of the applicant's spouse or minor children following to join him or her.")

Finally, the record does not show that any third country is available that would provide an alternative relocation for Wu or his family. There is no indication in the record of any place where Wu had resettled, any place where he had family ties, or any place where he could reunite with his spouse and children. Again, 8 C.F.R. § 1208.16(e) recognizes this concern, pro-

viding that upon reconsideration of discretionary denials of asylum, the BIA must consider whether "reasonable alternatives [are] available to the applicant such as reunification with his or her spouse or minor children in a third country."

We hold that the factors the IJ invoked to weigh against a grant of asylum in Wu's case were of dubious legitimacy. We find no other factors weighing against asylum in the record. We also hold that on this record, the adverse factors found by the IJ were of little weight in comparison to the factors favoring asylum, as the latter have been shaped by Congress, the courts, and the BIA itself. If the adverse factors relied upon in Wu's case could outweigh (a) a finding of a form of persecution that was expressly denominated as such by Congress, and (b) the humanitarian importance of family reunification, also explicitly recognized in applicable statutes and regulations, then the Attorney General's discretion under 8 U.S.C. § 1158(b)(1) would eclipse the substance of Congressional policies designed to make Wu and others similarly situated qualified for asylum. We therefore find that the IJ's decision was an abuse of discretion.[15] We remand to the BIA for a proper balancing of the factors governing discretionary judgments to grant or deny asylum.[16] Should the BIA find it appropriate to remand further, we strongly urge that this case be assigned to a different IJ than the one who

---

**15.** It is reasonable to expect that the BIA, having been given the opportunity, will act consistently with the way it has exercised discretion in the overwhelming majority of its cases. Accordingly, we do not deem it appropriate to decide at this time whether we would have the authority to order the granting of asylum directly, as was done in *Andriasian v. INS*, 180 F.3d 1033, 1047 (9th Cir. 1999).

**16.** An added reason for a remand and reconsideration by the BIA in this case is the entire-

ly inadequate representation that Wu received on his appeal of the IJ's decision to the BIA. The "brief," submitted by Karen Jaffe, Esq., contains a one-paragraph argument, consisting of 14 lines. There is no citation to any authority. The relevant BIA precedents, which we have recounted, are ignored. Fortunately, Wu is represented in this Court by new counsel, who can be expected to provide competent representation on the renewed administrative appeal.

previously handled Wu's application. *See, e.g., Wang v. Attorney Gen. of the United States,* 423 F.3d 260, 271 (3d Cir.2005); *Yi–Tu Lian v. Ashcroft,* 379 F.3d 457, 462 (7th Cir.2004); *Arulampalam v. Ashcroft,* 353 F.3d 679, 688–89 (9th Cir.2003).

The petition for review is therefore GRANTED. We AFFIRM the decision of the BIA with respect to Wu's eligibility for asylum, but VACATE the decision of the BIA with respect to the discretionary denial of asylum and REMAND the case to that agency for further proceedings consistent with this opinion.