[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12019

_____

Agency No. A209-230-482

VISAVAKUMAR THAMOTAR,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 17, 2021)

Before WILSON, JILL PRYOR and LAGOA, Circuit Judges.

JILL PRYOR, Circuit Judge:

Visavakumar Thamotar, a Sri Lankan citizen of Tamil ethnicity, seeks review of the Board of Immigration Appeals' ("BIA") order affirming an Immigration Judge's discretionary denial of his application for asylum and grant of withholding of removal. Mr. Thamotar argues that because removal was withheld, federal regulation 8 C.F.R. § 1208.16(e)[1] required reconsideration of his asylum claim, which the Immigration Judge and BIA failed to give. We agree with Mr. Thamotar that the agency failed to conduct the proper reconsideration. When an asylum applicant is denied asylum but granted withholding of removal, 8 C.F.R. § 1208.16(e) requires reconsideration anew of the discretionary denial of asylum, including addressing reasonable alternatives available to the petitioner for family reunification.[2] And where the Immigration Judge has failed to do so, the BIA must remand for the Immigration Judge to conduct the required reconsideration.

Here, the Immigration Judge failed to reconsider Mr. Thamotar's asylum claim under § 1208.16(e). The BIA's failure to remand on this issue was therefore

---

[1] Mr. Thamotar refers to both 8 C.F.R. §§ 208.16(e) and 1208.16(e) in his briefing. The two provisions are identical in substance, but § 1208.16(e) specifically applies to the BIA (and Immigration Judges) because of the enactment of the Homeland Security Act of 2002, Pub. L. No. 107-296, tit. IV, subtits. D, E, F, 116 Stat. 2135, 2192 (Nov. 25, 2002) (as amended), and the promulgation of final rule 68 Fed. Reg. 9823, effective February 28, 2003. 68 Fed. Reg. 9823, 9824–25, 9834 (Feb. 28, 2003); *see Huang v. INS*, 436 F.3d 89, 90 n.1 (2d Cir. 2006) (discussing this legislative history). For consistency, we will refer only to 8 C.F.R. § 1208.16(e).

[2] Because we vacate the BIA's order on this ground, we do not address Mr. Thamotar's additional challenges to the order, which included that the BIA erred by affirming the Immigration Judge's adverse credibility determination, which he contends was not supported by substantial evidence, and relying on his method of entry into the United States when affirming the Immigration Judge's decision.

manifestly contrary to law and an abuse of discretion. It is clear that neither the Immigration Judge nor the BIA conducted the proper reconsideration because the record contained no information about Mr. Thamotar's ability to reunite with his family, information that the agency must review under § 1208.16(e). Thus, the BIA should have remanded the case for further factfinding. We grant the petition, vacate the BIA's order, and remand to the BIA with instructions to remand to the Immigration Judge for reconsideration of the discretionary denial of asylum.

## I.    BACKGROUND

In this appeal, Mr. Thamotar comes before us for the second time seeking review of a BIA order denying him relief, after we ordered a remand to the BIA in his first appeal. At issue this time is the BIA's order affirming the Immigration Judge's decision denying Mr. Thamotar asylum and granting him withholding of removal after remand. Because this order refers to Mr. Thamotar's first removal hearing and the corresponding decisions of the Immigration Judge and BIA before remand, we briefly review these prior proceedings as well as Mr. Thamotar's application for relief before discussing the order on appeal.

### A. Mr. Thamotar's Entrance into the United States and Application for Asylum and Related Relief

Mr. Thamotar entered the United States without valid entry documents at a designated port of entry, telling immigration officials at the border that he feared returning to his home country of Sri Lanka. An immigration official gave him a

3

credible fear interview.  During the interview, Mr. Thamotar explained that Sri Lankan army police officers arrested and harmed him because of his Tamil ethnicity.  Mr. Thamotar said he was transporting passengers in his taxi van when he stopped at a military check point.  At the checkpoint, army officers discovered he was Tamil and accused him of being part of the Liberation Tigers of Tamil Eelam (the "LTTE").[3]  The officers arrested him, beat him, and took him to a camp where they continued to beat and interrogate him.

While Mr. Thamotar was imprisoned at the camp, for 14 days, he was hung upside down, beaten, and given urine to drink instead of water.  Three days after his release, army officials "came to [his] home and beat [him]," attacked his wife and son, and threatened to kill his daughter.  AR 1366.[4]  Mr. Thamotar said he could not return to Sri Lanka because officials there would kill him.

The Department of Homeland Security issued Mr. Thamotar a notice to appear, charging him as removable as an applicant for admission without a valid entry document.  8 U.S.C. § 1182(a)(7)(A)(i)(I).  At a master calendar hearing, Mr. Thamotar admitted the allegations in the notice to appear and conceded

---

[3] The LTTE is a guerilla group in Sri Lanka that uses force and intimidation to advocate for a separate Tamil state.  *See generally Mohideen v. Gonzales*, 416 F.3d 567, 568 (7th Cir. 2005).

[4] "AR" refers to the administrative record.

removability.  The Immigration Judge determined that Mr. Thamotar was removable.

Mr. Thamotar applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT") based on his race, political opinion, nationality, and membership in a particular social group.  In support of his application, Mr. Thamotar attached a personal statement and affidavits from his wife and father.  There were inconsistencies across his credible fear interview, application, and accompanying materials, including the date of his marriage, the date army officials came to his home and attacked his family, and whether Mr. Thamotar himself was attacked when officials came to his home.  These discrepancies led the Immigration Judge to find Mr. Thamotar not credible.

### B.  First Removal Hearing and First Appeal to the BIA and this Court

At his first removal hearing, Mr. Thamotar reiterated much of the account from his credible fear interview and personal statement.  He also elaborated on his flight from Sri Lanka, testifying that he traveled through the Ivory Coast, Ghana, Ecuador, Colombia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico, where he was detained by Mexican officials for one day.  Mr. Thamotar said that he did not apply for asylum in any of the countries he traveled through before coming to the United States because he was unaware that he could.

DHS argued at the hearing that Mr. Thamotar should not receive asylum "as a matter of discretion" because, among other reasons, he was not credible and he passed through several countries before seeking asylum in the United States.  AR 673–74.  The Immigration Judge continued the proceedings, in part to allow Mr. Thamotar to respond to DHS's argument regarding denying asylum in the exercise of discretion.  Mr. Thamotar then submitted a brief arguing that discretionary denials of asylum are exceedingly rare and that the Immigration Judge "must consider the impact of the asylum denial on [Mr. Thamotar's] ability 'to be reunited with his spouse and minor child.'"  *Id.* at 767 (quoting *In re T-Z-*, 24 I. & N. Dec. 163, 176 (B.I.A. 2007) (citing 8 C.F.R. § 1208.16(e))).

In a written decision, the Immigration Judge denied Mr. Thamotar's application for asylum, withholding of removal, and CAT relief, finding that his account of persecution was inconsistent with other evidence in the record and was therefore not credible.  In relevant part, the Immigration Judge noted that Mr. Thamotar's wife swore in her affidavit that they married in October 2007, yet Mr. Thamotar stated in his asylum application that they married in October 2006, and that the record was inconsistent regarding when officials assaulted his wife and whether he was assaulted as well.

Because the Immigration Judge found Mr. Thamotar not credible, he concluded that Mr. Thamotar could not meet his burden of proof for asylum or

withholding of removal.  The Immigration Judge further observed that even if Mr. Thamotar had established that he suffered past persecution or had a well-founded fear of future persecution, he still would not be granted asylum because his only "positive equity [was] his health," and that did not outweigh the "negative equities," including his inconsistent testimony and lack of candor.  *Id.* at 583.  The Immigration Judge also denied Mr. Thamotar CAT relief, noting that Mr. Thamotar had failed to establish that it was more likely than not that he would be tortured in Sri Lanka.

Mr. Thamotar appealed to the BIA, which adopted and affirmed the Immigration Judge's decision.  He then filed a petition for review in this Court. The government moved to remand the case in full to the BIA for further factfinding on Mr. Thamotar's claim that he feared future persecution based on "his Tamil ethnicity alone or in conjunction with his status as a failed asylum seeker."  *Id.* at 504.  We granted the motion and remanded the case to the BIA for further proceedings as outlined by the government's motion.  The BIA in turn remanded the case to the Immigration Judge for further proceedings.

**C. Second Removal Hearing and Second Appeal to the BIA and this Court**

On remand from the BIA, the Immigration Judge scheduled a second removal hearing.  Before the hearing, Mr. Thamotar submitted additional evidence, including news articles and reports indicating that Tamils faced persecution in Sri

7

Lanka based on their ethnicity and status as failed asylum seekers. Mr. Thamotar also filed an updated affidavit from his father, who swore that his first affidavit mistakenly said the attack on Mr. Thamotar's wife happened in September, when in fact it occurred on October 10. In addition, Mr. Thamotar submitted his marriage certificate, which showed that he was married on October 24, 2007.

At the hearing, Mr. Thamotar argued that the Immigration Judge should reconsider all issues—including his initial credibility findings—because on remand the BIA did not expressly retain jurisdiction or limit the Immigration Judge's inquiry. Mr. Thamotar asserted that the Immigration Judge erred in finding that he was not credible because, among other things, the inconsistent dates about the attack on his wife were the result of his father's mistake, which his father corrected in an updated affidavit. Mr. Thamotar also directed the Immigration Judge to his evidence showing that there is an established pattern or practice of persecution against Tamil failed asylum seekers in Sri Lanka.

The Immigration Judge issued a written decision denying Mr. Thamotar asylum as a matter of discretion but granting him withholding of removal. The Immigration Judge granted Mr. Thamotar withholding of removal because he was "more likely than not to face persecution" if he returned to Sri Lanka due to his status as a Tamil failed asylum seeker. *Id.* at 81. The Immigration Judge concluded that there was a pattern or practice of persecution against Tamils who

8

return to Sri Lanka, as they are suspected of being former LTTE members. Because the Sri Lankan government is responsible for this persecution and the government controls all of Sri Lanka, the Immigration Judge found, relocation within Sri Lanka would not be feasible. Thus, the Immigration Judge determined that Mr. Thamotar, an ethnic Tamil and failed asylum seeker, would "more likely than not face abduction, torture, rape, and other harm at the hands of the Sri Lanka security forces if he is returned to Sri Lanka on account of his imputed political opinion of being a former LTTE member." *Id*. at 82–83.

In denying asylum, the Immigration Judge incorporated his previous findings regarding Mr. Thamotar's credibility and testimony. Additionally, the Immigration Judge concluded that the fact that Mr. Thamotar was granted withholding of removal and thus would not face future persecution in Sri Lanka weighed against granting him asylum as a matter of discretion.

Mr. Thamotar appealed the decision to the BIA. He argued that the Immigration Judge erred by not revisiting his initial adverse credibility determination, by relying on his failure to seek asylum in other countries he traveled through, and by failing to reconsider the impact the discretionary denial of asylum after granting withholding of removal would have on his ability to reunite with his family, as required by 8 C.F.R. § 1208.16(e).

9

The BIA affirmed the Immigration Judge's discretionary denial of asylum, concluding that the Immigration Judge did not err by relying on three negative equities—that Mr. Thamotar was not credible, that he did not seek asylum in the countries he traveled through, and that he was entitled to withholding of removal—to support its decision.

As relevant to this appeal, the BIA concluded that the Immigration Judge's failure to reconsider its discretionary denial of asylum under 8 C.F.R. § 1208.16(e) did not warrant remand. The BIA noted that it considers *de novo* whether an applicant is entitled to a discretionary grant of asylum under 8 C.F.R. § 1003.1(d)(3)(ii) and acknowledged that although § 1208.16(e) establishes family unification as an appropriate factor to consider in determining whether asylum should be granted, in Mr. Thamotar's case, family unification alone was insufficient to overcome the negative factors. Thus, the BIA affirmed the Immigration Judge's discretionary denial of asylum.

Mr. Thamotar timely appealed to this Court.

## II.    DISCUSSION

The issues this appeal raises are first, whether we have jurisdiction under the Immigration and Nationality Act ("INA") and Article III of the United States Constitution to consider Mr. Thamotar's petition, and second, whether the agency

properly reconsidered the discretionary denial of asylum under 8 C.F.R.
§ 1208.16(e).

## A. Jurisdiction

Before addressing the merits of Mr. Thamotar's arguments, we must first
determine whether we have jurisdiction to consider them. *See Williams v.
Chatman*, 510 F.3d 1290, 1293 (11th Cir. 2007). We review questions of subject
matter jurisdiction *de novo*. *Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1282 n.4
(11th Cir. 2016).

Whether we have jurisdiction to review an order denying asylum but
granting withholding of removal is an issue of first impression in this Court, so we
ordered the parties to submit supplemental briefing to address this question. We
agree with the parties that we have jurisdiction to review Mr. Thamotar's petition
under the INA because the petition seeks review of a "final order of removal." 8
U.S.C. § 1252(a)(1), (b)(9) (limiting judicial review to final orders of removal).
We also agree with the parties that even though Mr. Thamotar is in no danger of
being removed to Sri Lanka, this case is not moot; it presents a live controversy
under Article III of the Constitution. *See, e.g.*, *Christian Coal. of Fla., Inc. v.
United States*, 662 F.3d 1182, 1189 (11th Cir. 2011) (explaining that Article III of
the Constitution limits this Court's jurisdiction to cases presenting a live
controversy).

11

### 1.     Jurisdiction Under INA

The INA limits our jurisdiction to "final order[s] of removal."  8 U.S.C. § 1252(a)(1), (b)(9); *see Jaggernauth v. U.S. Att'y Gen.*, 432 F.3d 1346, 1350 (11th Cir. 2005).  An "order of removal" is a determination that a noncitizen[5] is removable from the United States or an order directing the noncitizen's removal from the United States.  8 U.S.C. § 1101(a)(47)(A).[6]  So, even where a noncitizen is not ordered removed from the United States, a decision qualifies as an order of removal if an Immigration Judge or the BIA determines the noncitizen is removable.  A removal order is "final" when the BIA affirms an Immigration Judge's order of removal or when the time to appeal an Immigration Judge's decision has expired, whichever is earlier.  *Id*. § 1101(a)(47)(B).

Whether an order granting withholding of removal constitutes a final order of removal subject to judicial review under 8 U.S.C. § 1252(a)(1) is a question of first impression in our circuit.  Today, we join our sister circuits in concluding that it does.  *See Viracacha v. Mukasey*, 518 F.3d 511, 513–14 (7th Cir. 2008)

---

[5] We use the term "noncitizen" as an equivalent for the statutory term "alien."  *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1689 n.2 (2020).

[6] Section 1101(a)(47)(A) refers to the "order of deportation," which has been synonymous with the term "order of removal" since the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").  IIRIRA, Pub. L. No. 104-208, § 309(d)(2), 110 Stat. 3009-627 (providing that the term "order of removal" is deemed to refer to an "order of deportation" or "order of exclusion"); *see also Calcano-Martinez v. INS*, 533 U.S. 348, 350 n.1 (2001); *Viracacha v. Mukasey*, 518 F.3d 511, 513–14 (7th Cir. 2008) ("[S]ince 1996 ['an order of deportation'] is the same thing as an 'order of removal.'").

(concluding, where asylum was denied but withholding of removal was granted, the order was final because it found petitioners removable even if it did not order them removed); *see also Sathanthrasa v. Att'y Gen.*, 968 F.3d 285, 292 (3d Cir. 2020) (stating that the Court had jurisdiction where asylum was denied but withholding of removal was granted); *Zuh v. Mukasey*, 547 F.3d 504, 506 (4th Cir. 2008) (same); *Gulla v. Gonzales*, 498 F.3d 911, 913 (9th Cir. 2007) (same).

An order granting a noncitizen withholding of removal is a final order of removal because an Immigration Judge must issue an order of removal before granting withholding. *Matter of I-S- & C-S-*, 24 I. & N. Dec. 432, 433–34 (B.I.A. 2008). As a matter of logic, "to withhold removal there must first be an order of removal that can be withheld." *Id.* at 433. Also, a noncitizen protected by an order of withholding of removal may nonetheless be removed to a third country; thus, the Immigration Judge must issue an order of removal authorizing DHS to carry out such a removal. *Id.* at 434; *see* 8 C.F.R. § 1208.16(f). Here, the Immigration Judge determined that Mr. Thamotar was removable pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), and then, in the same decision, ordered him removed to Sri Lanka but granted him withholding of removal so that he would not be sent to Sri Lanka. The Immigration Judge's order of removal became final when the BIA affirmed it. *See* 8 U.S.C. § 1101(a)(47)(B)(i). Because the order denying Mr.

13

Thamotar asylum but granting him withholding of removal is a final order of removal, we have jurisdiction to review it under 8 U.S.C. § 1252(a)(1).

## 2.  Jurisdiction Under Article III—Mootness

We must now determine whether Mr. Thamotar's petition for review of the denial of asylum presents a live controversy under Article III of the Constitution given that he received withholding of removal and so will not be removed to Sri Lanka.  *See Yunker v. Allianceone Receivables Mgmt., Inc.*, 701 F.3d 369, 372 (11th Cir. 2012) (explaining that Article III "limits the jurisdiction of the federal courts to actual cases and controversies" (internal quotation marks omitted)).  A case that "no longer presents a live controversy with respect to which the court can give meaningful relief" is moot and thus nonjusticiable.  *Christian Coal.*, 662 F.3d at 1189 (internal quotation marks omitted).  Put differently, we lack authority to "declare principles or rules of law which cannot affect the matter in issue in the case before [us]." *Id.* (internal quotation marks omitted).

Mr. Thamotar's petition presents a live controversy, and is therefore not moot, because asylum status affords more benefits than withholding of removal. *See Viracacha*, 518 F.3d at 514 (listing differences between asylum and withholding of removal).  For instance, an asylum holder generally is permitted to remain in the United States until he no longer has a well-founded fear of persecution in his home country because of a fundamental change in

14

circumstances.  8 U.S.C. § 1158(c)(2)(A).[7]  By contrast, withholding of removal only protects a noncitizen from being removed to a particular country—nothing prevents DHS from removing him to a third country.  *See* 8 C.F.R. § 1208.16(f); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 419 (1999).  Additionally, asylum holders may apply for permanent residency after one year, *see* 8 U.S.C. § 1159(b), and then apply for citizenship after an additional five years of continuous residence in the United States, *see id.* § 1427.  Withholding of removal provides no such opportunity.  Other benefits afforded to those granted asylum include derivative asylum for an accompanying or following spouse and minor children and the ability to travel abroad with the government's permission.  *Id.* § 1158(b)(3)(A), (c)(1)(C); *see also Yu v. U.S. Att'y Gen.*, 568 F.3d 1328, 1333 (11th Cir. 2009).  A noncitizen granted withholding of removal receives no such benefits.  *See* 8 C.F.R. § 1241.7; *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 862 (11th Cir. 2007) ("[T]here are no derivative benefits associated with a grant of withholding of removal.").

To sum up, "asylum status is more valuable to [a noncitizen] than withholding of removal."  *Viracacha*, 518 F.3d at 514.  In Mr. Thamotar's case, asylum would give him an opportunity to become a lawful permanent resident and naturalized United States citizen.  8 U.S.C. §§ 1159(b), 1427.  With asylum, Mr.

---

[7] Section 1158(c)(2) lists additional grounds for termination of asylum.  *See* 8 U.S.C. § 1158(c)(2).

15

Thamotar's wife and three children might be eligible to join him here as derivative asylees, and he could travel abroad with the government's consent. 8 U.S.C. § 1158(b)(3)(A), (c)(1)(C). We thus conclude that there are "enough differences between asylum and withholding of removal to yield a live controversy" under Article III. *Viracacha*, 518 F.3d at 514.

Having determined that we have jurisdiction to entertain Mr. Thamotar's petition, we proceed to review the petition's merits.

## B. Merits

### 1.    Standard of Review

We review only the BIA's decision, except where the BIA expressly adopts or explicitly agrees with the Immigration Judge's opinion. *Lukaj v. U.S. Att'y Gen.*, 953 F.3d 1305, 1311 (11th Cir. 2020). In such cases, we review the Immigration Judge's opinion to the extent the BIA found that the Immigration Judge's reasons were supported by the record, and we review the BIA's decision with regard to those matters on which it rendered its own opinion and reasoning. *See Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011).

We review the BIA and Immigration Judge's legal conclusions *de novo*. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). We review factual findings under the substantial evidence test, which requires us to affirm the agency's factual findings so long as they are "supported by reasonable, substantial,

and probative evidence on the record considered as a whole." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1286 (11th Cir. 2020) (internal quotation marks omitted).  We view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in its favor.  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).  Thus, a finding of fact will be reversed "only when the record compels a reversal."  *Id.*

Although we have never had the occasion to apply it in a published opinion, the standard of review for a discretionary denial of asylum is set out in 8 U.S.C. § 1252(b)(4)(D), which provides that a discretionary decision granting or denying asylum "shall be conclusive unless manifestly contrary to the law and an abuse of discretion."[8]  8 U.S.C. § 1252(b)(4)(D); *see also Huang v. INS*, 436 F.3d 89, 96 (2d Cir. 2006) (applying the standard set forth in § 1252(b)(4)(D) to review a discretionary denial of asylum); *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004) (same).

---

[8] We have, however, applied this standard of review in an unpublished decision rejecting a challenge to an Immigration Judge's discretionary denial of asylum.  *Awoleye v. U.S. Att'y Gen.*, 608 F. App'x 868, 877 (11th Cir. 2015) (unpublished).  And, in a published decision reviewing a denial of asylum based on the petitioner's failure to establish eligibility for relief, we noted that "[t]he Attorney General's discretionary judgment whether to grant asylum 'shall be conclusive unless manifestly contrary to the law and an abuse of discretion.'"  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(D)).  We did not apply this standard in *Sepulveda* because the applicant was denied asylum due to his ineligibility, not as a matter of discretion.  *Id.* at 1233.

17

2.    **Mr. Thamotar's Claim that the Agency Failed to Comply with 8 C.F.R. § 1208.16(e)**

The central question raised in this appeal is whether, after Mr. Thamotar was granted withholding of removal, the agency failed to reconsider its discretionary denial of asylum as required by 8 C.F.R. § 1208.16(e). To resolve this issue, we begin with an overview of asylum and withholding of removal, including the factors that guide the agency's decision whether to grant asylum in the exercise of discretion. We then address the requirements for reconsidering a discretionary denial of asylum under § 1208.16(e) before reviewing the agency's decisions in this case. We conclude that Mr. Thamotar's asylum claim received inadequate reconsideration under § 1208.16(e); therefore, the BIA's order affirming the Immigration Judge's decision was manifestly contrary to law and an abuse of discretion.

a.    **Unlike Withholding of Removal, Asylum is a Discretionary Form of Relief.**

To obtain withholding of removal, a noncitizen must show that if returned to his home country, his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Specifically, the noncitizen must prove that if returned, "it is more likely than not that [he] will be persecuted or tortured." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005)

18

(internal quotation marks omitted).  Once an applicant carries this burden, he is automatically entitled to relief and "may not [be] remove[d]" to his home country. 8 U.S.C. § 1231(b)(3)(A); *see INS v. Cardoza-Fonseca*, 480 U.S. 421, 443 (1987).[9]

In contrast to withholding of removal, the agency's decision to grant or deny asylum is discretionary.  *Sepulveda*, 401 F.3d at 1230–31; 8 U.S.C. § 1158(b)(1)(A).  The Attorney General has discretion to grant asylum to any noncitizen who meets the INA's definition of a "refugee."  8 U.S.C. § 1158(b)(1)(A).  A "refugee" is a person who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  *Id.* § 1101(a)(42)(A); *see Kazemzadeh*, 577 F.3d at 1351.  An asylum applicant must prove he meets this definition to establish eligibility for asylum.  *Sepulveda*, 401 F.3d at 1230.  To establish asylum eligibility, an applicant must show, with credible evidence, that he faced past persecution or has a well-founded fear of future persecution on account of a statutorily protected ground. *Lingeswaran*, 969 F.3d at 1286; *see* 8 C.F.R. § 1208.13(a), (b).  But even if an applicant satisfies this burden, he "does not have a *right* to remain the United States; he . . . is simply *eligible* for asylum, if the Attorney General, in his

---

[9] Section 1231(b)(3)(B) lists exceptions to the general rule that once an applicant has satisfied the standard for withholding of removal, he may not be removed to his home country. *See* 8 U.S.C. § 1231(b)(3)(B).

discretion, chooses to grant it." *Cardoza-Fonseca*, 480 U.S. at 443; *see also*

*Sepulveda*, 401 F.3d at 1231 ("If [an asylum applicant] meets th[is] burden, the

actual grant of asylum is a matter of discretion.").

Although the decision to grant asylum to an eligible applicant rests in the

agency's discretion, this discretion is not unlimited. The BIA has established some

limitations on an Immigration Judge's discretion to deny asylum to refugees who

have established their eligibility. Specifically, the BIA has stated that once an

applicant has established eligibility, the discretionary decision to grant asylum

must be based on the "totality of the circumstances," which involves balancing

adverse factors against favorable ones. *Matter of Pula*, 19 I. & N. Dec. 467, 473

(B.I.A. 1987), *superseded in other part by regulation as recognized in Andriasian*

*v. INS*, 180 F.3d 1033, 1043–44 & n.17 (9th Cir. 1999). Among other factors,

immigration judges should consider whether the noncitizen passed through other

countries before arriving in the United States, whether orderly refugee procedures

were available to him in any country he passed through, whether he engaged in

fraud, and whether general humanitarian considerations favor granting asylum,

such as age or poor health. *Matter of Pula*, 19 I. & N. Dec. at 473–74; *see also*

*Matter of A-H-*, 23 I. & N. Dec. 774, 782–83 (A.G. 2005) (evaluating an

applicant's individualized equities and adverse factors before denying asylum in

the exercise of discretion); *Matter of H-*, 21 I. & N. Dec. 337, 347–48 (B.I.A.

1996) ("Our caselaw also recognizes that general humanitarian reasons . . . such as [an applicant's] age, health, or family ties, should also be considered in the exercise of discretion."). These precedential agency decisions "are binding on . . . immigration judges" and cabin the scope of their discretion to grant or deny asylum to an otherwise eligible applicant. 8 C.F.R. § 1003.1(g)(1), (2).

### b. Where an Applicant is Denied Asylum in the Exercise of Discretion but Granted Withholding of Removal, Section 1208.16(e) Requires Reconsideration of the Discretionary Denial.

Where an applicant proves he is eligible for asylum, a discretionary denial is "exceedingly rare," and is "even more rare when the [Immigration Judge] or BIA has found the applicant entitled to withholding of removal." *Sathanthrasa*, 968 F.3d at 296 (internal quotation marks omitted). In the rare event that an applicant is granted withholding of removal but denied asylum as a matter of discretion, federal regulations require the agency to reconsider the discretionary denial of asylum. 8 C.F.R. § 1208.16(e). Section 1208.16(e) states:

> In the event that an applicant is denied asylum solely in the exercise of discretion, and the applicant is subsequently granted withholding of deportation or removal under this section, thereby effectively precluding admission of the applicant's spouse or minor children following to join him or her, the denial of asylum shall be reconsidered. Factors to be considered will include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country.

21

*Id.*[10]

This Court has had no occasion to interpret or apply § 1208.16(e), but four of our sister circuits have. *See Sathanthrasa*, 968 F.3d at 293–96; *Zuh*, 547 F.3d at 507–08; *Huang*, 436 F.3d at 92–94; *Kalubi*, 364 F.3d at 1141. As a majority of these circuits have recognized, "it is both logical and reasonable that reconsideration of asylum is mandatory for a petitioner in this 'unusual legal status.'" *Sathanthrasa*, 968 F.3d at 293 (quoting *Zuh*, 547 F.3d at 508). This is because, as we explained above, even though a noncitizen granted withholding of removal will not be returned to the country where he likely faces persecution, he

---

[10] We note that, after this appeal was filed, the Department of Justice and DHS issued a final rule ("the Rule") that eliminates 8 C.F.R. §§ 1208.16(e) and 208.16(e). Procedures for Asylum and Bars to Asylum Eligibility, 85 Fed. Reg. 67202, 67257 (Oct. 21, 2020). Because the Rule does not provide for retroactive application, it applies only prospectively and thus does not impact Mr. Thamotar's appeal. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("administrative rules will not be construed to have retroactive effect unless their language requires this result"); 5 U.S.C. § 551(4) (defining a "rule" as an agency statement having "future effect"). In addition, although the Rule was scheduled to take effect on November 20, 2020, on November 19, 2020, the district court for the Northern District of California entered a nationwide temporary restraining order enjoining the Rule from taking effect. *Pangea Legal Services, et al. v. Dep't of Homeland Sec.*, 501 F. Supp. 3d 792, 798 (N.D. Cal. 2020). Five days later, the district court converted the temporary restraining order into a preliminary injunction. *See* Order Converting Temporary Restraining Order to Preliminary Injunction at 2, *Pangea Legal Services*, No. 20-CV-07721-SI (N.D. Cal. Nov. 24, 2020). The defendants appealed the district court's order entering a preliminary injunction and moved to stay the proceedings and the preliminary injunction pending their appeal. *See* Order on Defendants' Motions to Stay, *Pangea Legal Services*, No. 20-CV-07721-SI (N.D. Cal. Dec. 28, 2020). The district court granted the motion to stay proceedings and denied the motion to stay the preliminary injunction. *Id.* The defendants' appeal of the preliminary injunction is pending in the Ninth Circuit. *See Pangea Legal Services, et al. v. Dep't of Homeland Sec.*, No. 20-17490 (9th Cir. filed Dec. 28, 2020).

may not apply for permanent residency in the United States, travel abroad freely, or petition for his family to join him as derivative asylees.

Section 1208.16(e) is concerned with the issue of family unification, recognizing that granting an applicant withholding of removal but denying him asylum "effectively preclud[es] admission of the applicant's spouse or minor children following to join him." 8 C.F.R. § 1208.16(e). Thus, for applicants granted withholding of removal who have families outside the United States, the discretionary denial of asylum "shall be reconsidered." *Id.* The factors the agency must consider include any "reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country," as well as the "reasons for the denial" of asylum. *Id.*

The regulation's mandate is clear, but the scope of the required reconsideration is less evident. Specifically, the regulation fails to explain whether, on reconsideration, the agency must reweigh the "totality of the circumstances," *Matter of Pula*, 19 I. & N. Dec. at 473, or it must address only the factor of reasonably available alternatives for family reunification. Nor does the regulation identify who—the Immigration Judge or the BIA—must do the reconsidering. *See Shantu v. Lynch*, 654 F. App'x 608, 614 (4th Cir. 2016) (unpublished). We turn now to these two open questions.

23

### i.  Section 1208.16(e) Requires Reconsideration of the Factors Weighing For and Against Asylum.

Regarding the level of reconsideration required by § 1208.16(e), only the Third and Ninth Circuits have addressed this question.[11]  In *Sathanthrasa*, the Third Circuit held that in addition to addressing "reasonably available alternatives to family reunification," the regulation also requires a fresh reassessment of the factors weighing for and against asylum.  *Sathanthrasa*, 968 F.3d at 296.  In *Kalubi*, the Ninth Circuit observed that under § 1208.16(e) the petitioner's "separation from his spouse should be considered and how it weighs in the balance of favorable and unfavorable factors [related to the discretionary asylum denial] should be explained."  *Kalubi*, 364 F.3d at 1141.  The court stated that the agency "must balance *all* relevant factors," concluding the BIA's statement that it "considered the provisions of 8 C.F.R. § 208.16(e), but did not find them determinative" was "conclusory" and "not sufficient."  *Id.* (alteration adopted) (internal quotation marks omitted).

---

[11] The Fourth Circuit, in an unpublished opinion, acknowledged that the regulation failed to specify "precisely how . . . [the] reconsideration was to take place."  *Shantu*, 654 F. App'x at 615.  The *Shantu* court did not resolve this question, but it observed that there must be "*some* reexamination of a discretionary denial of asylum when withholding of removal is granted, under the factors set out in the regulation."  *Id*.

Finding these decisions persuasive, we conclude that § 1208.16(e) requires reconsideration anew of the discretionary denial of asylum.[12]  That is, once the agency has denied an applicant asylum but granted him withholding of removal, the agency must reevaluate the "totality of the circumstances," *Matter of Pula*, 19 I. & N. Dec. at 473, and "reweigh[] . . . the positive and negative factors," paying particular attention to the reasonable alternatives for family reunification, *Sathanthrasa*, 968 F.3d at 296; *see Kalubi*, 364 F.3d at 1141.  As the Third Circuit explained, it is insufficient for the agency to address on reconsideration "only the factor of reasonably available alternatives to family reunification" because the regulation explicitly requires the agency also to consider the "'reasons for the denial' of asylum." *Sathanthrasa*, 968 F.3d at 296 (quoting 8 C.F.R. § 1208.16(e)).  That the regulation mandates addressing the "reasons for denial," 8 C.F.R. § 1208.16(e), suggests that the agency must again assess the "totality of the circumstances" to determine whether an applicant is entitled to a discretionary grant of asylum, *Matter of Pula*, 19 I. & N. Dec. at 473.  Under § 1208.16(e), then, the agency must conduct a "*de novo* reweighing of the positive and negative factors" that support the discretionary decision and pay "special attention to the

---

[12] In this case, neither party has directly addressed the level of reconsideration required under § 1208.16(e).  We note, however, that the government implicitly adopts the *de novo* reweighing standard adopted in *Sathanthrasa*:  the government argues "there is no reason to believe that the agency failed to consider family separation, or that it did not conduct a *de novo* balancing of Thamotar's equities." Appellate Docket ("App. Doc.") 38 at 10.

25

availability of reasonable alternatives for family reunification." *Sathanthrasa*, 968 F.3d at 296 (internal quotation marks omitted).

### ii.  Section 1208.16(e) Requires the Immigration Judge to Reconsider the Discretionary Denial of Asylum.

Although no court has determined who—the Immigration Judge or the BIA—must reconsider the asylum denial under 8 C.F.R. § 1208.16(e), the BIA has held that the Immigration Judge must conduct this required reconsideration, and where he has failed to do so, the BIA has remanded to the Immigration Judge. *See In re T-Z-*, 24 I. & N. Dec. 163, 176–77 (B.I.A. 2007).[13]  In *In re T-Z-*, the only published BIA decision discussing § 1208.16(e), the BIA held that "[u]nder 8 C.F.R. § 1208.16(e), when [a noncitizen] is denied asylum solely in the exercise of discretion but is subsequently granted withholding of removal, the Immigration Judge must reconsider the denial of asylum to take into account factors relevant to family unification." *Id.* at 176.  The BIA observed that in denying asylum in the exercise of discretion, the Immigration Judge "relied on a number of adverse factors, but he failed to discuss or consider the impact of the denial on the respondent's ability to be reunited with his spouse and minor child" as required by

---

[13] Some circuits have discussed who must conduct the required reconsideration under 8 C.F.R § 1208.16(e), but none has definitively resolved it.  *See Sathanthrasa*, 968 F.3d at 298 (observing "the IJ [has a] duty to reconsider a discretionary denial of asylum"); *Huang*, 436 F.3d at 93 (noting 8 C.F.R § 1208.16(e) "requir[es] the BIA (or the IJ for that matter) to reconsider any denial of asylum *sua sponte*"); *see also Kalubi*, 364 F.3d at 1141 (addressing only the BIA's duty to reconsider a discretionary denial of asylum under § 1208.16(e) and failing to discuss any role of the Immigration Judge).

§ 1208.16(e). *Id.* Therefore, the BIA remanded the case to the Immigration Judge with instructions to conduct the required reconsideration, including determining whether there were "reasonable alternatives available to the applicant such as reunification" with his family. *Id.* (quoting 8 C.F.R. § 1208.16(e)).

We agree that when an applicant is denied asylum in the exercise of discretion but granted withholding of removal and the Immigration Judge fails to reconsider its discretionary denial of asylum under 8 C.F.R. § 1208.16(e), the BIA must remand for the Immigration Judge to conduct this required reconsideration. *See id.* at 176–77. The reevaluation required by § 1208.16(e) is a fact-based inquiry; additional factfinding may be required to determine an applicant's family situation and whether "reasonable alternatives" for family reunification are available. 8 C.F.R. § 1208.16(e); *see also Sathanthrasa*, 968 F.3d at 293 n.4 (noting that "the nature of the fact-finding at issue" weighs in favor of the Immigration Judge conducting the reconsideration mandated by § 1208.16(e)). Further, it is settled that the BIA cannot "engage in factfinding in the course of deciding cases" and should remand to the Immigration Judge if further factfinding is needed. 8 C.F.R. § 1003.1(d)(3)(iv); *see also Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1308 (11th Cir. 2013) ("[Section 1003.1(d)(3)] forbids the BIA from independently engaging in fact-finding"). The factfinding required under § 1208.16(e) suggests that the Immigration Judge is best suited to conduct this

27

reconsideration.  If the Immigration Judge fails to do so, the BIA must remand. *See In re T-Z-*, 24 I. & N. Dec. at 176–77.

### c. The Immigration Judge Failed to Reconsider the Discretionary Denial of Asylum, and the BIA Erred in Failing to Remand.

Applying the above principles to this case, we conclude that the Immigration Judge failed to reconsider his discretionary denial of asylum as required by 8 C.F.R. § 1208.16(e), and the BIA erred in failing to remand despite outstanding questions of fact related to the § 1208.16(e) inquiry.  These outstanding factual questions include "the impact of [the] discretionary denial of asylum on [Mr. Thamotar's] ability to be reunited with his wife and minor child[ren]," *In re T-Z-*, 24 I. & N. Dec. at 177, and whether Mr. Thamotar could realistically "reuni[te] with his . . . [family] in a third country," 8 C.F.R. § 1208.16(e).

The Immigration Judge was required to reconsider the discretionary denial of asylum after granting Mr. Thamotar withholding of removal based on his finding that Mr. Thamotar was more likely than not to face persecution if returned to Sri Lanka.  8 C.F.R. § 1208.16(e); *In re T-Z-*, 24 I. & N. Dec. at 176.  We acknowledge that an Immigration Judge has discretion whether to grant an otherwise eligible applicant asylum, but this discretion must be exercised according to governing regulations and agency decisions.  *See Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1268 (11th Cir. 2020) (en banc) ("if [an agency] announces and follows—by rule or by settled course of adjudication—a general policy by

28

which its exercise of discretion will be governed," then a departure from that policy "could constitute action that must be overturned") (internal quotation marks omitted). In this case, the regulation required the Immigration Judge to reevaluate the "totality of the circumstances," *Matter of Pula*, 19 I. & N. Dec. at 473, and reconsider the "factors weighing for and against asylum," paying particular attention to the issue of family reunification, *Sathanthrasa*, 968 F.3d at 299; *see* 8 C.F.R. § 1208.16(e). Yet the Immigration Judge simply incorporated and reiterated the findings from his initial decision denying Mr. Thamotar asylum and stated, without explanation, that he had "weighed both positive and negative equities."[14] AR 79.

The Immigration Judge's conclusory statement that he weighed Mr. Thamotar's equities is insufficient reconsideration. Although an Immigration Judge "need not write an exegesis on every contention," he must nonetheless "announce [his] decision in terms sufficient to enable a reviewing court to perceive

---

[14] The Immigration Judge also included an additional negative equity in its determination—that Mr. Thamotar would not face future persecution because his removal to Sri Lanka was withheld. This was error. True, danger of future persecution "outweigh[s] all but the most egregious of adverse factors," in the discretionary balancing. *Matter of Pula*, 19 I. & N. Dec. at 474. But it does not follow that a grant of withholding of removal—meaning a lower likelihood of future persecution—should thus constitute an *adverse* factor in the balancing. Indeed, as the Second Circuit explained, "if one accepted this position, those very asylum-seekers who met the higher standard of proof of persecution required for withholding of removal (and thus those persons most in need of this nation's asylum relief) would be the ones who received less protection." *Huang*, 436 F.3d at 98 n.11; *see also Sathanthrasa*, 968 F.3d at 295; *Zuh*, 547 F.3d at 512 n.5; *but see Kalubi*, 364 F.3d at 1141.

that [he] has heard and thought and not merely reacted." *Min Yong Huang v. Holder*, 774 F.3d 1342, 1349 (11th Cir. 2014) (internal quotation marks omitted). Here, the Immigration Judge failed to do so: the decision made no mention of § 1208.16(e), and there was no indication that the Immigration Judge considered the issue of family reunification. *See In re T-Z-*, 24 I. & N. Dec. at 176–77.

On appeal, the BIA erroneously concluded that it was unnecessary to remand based on the Immigration Judge's failure to address family unification because "[t]here is no dispute of fact that [Mr. Thamotar] has a wife and children in Sri Lanka." AR 10. But Mr. Thamotar's family in Sri Lanka would be "preclud[ed]" from "following to join him" because he was denied asylum but granted withholding of removal. 8 C.F.R. § 1208.16(e). So, the regulation required the agency to determine whether and where, if anywhere, Mr. Thamotar's family could reunify. *See id.* Then, the agency was required to weigh this information in its reconsideration of the discretionary denial of asylum. *See Sathanthrasa*, 968 F.3d at 296.

The BIA failed to conduct this inquiry properly because additional information was required to reconsider Mr. Thamotar's asylum claim. Thus, the BIA should have remanded the case to the Immigration Judge for further factfinding. *See* 8 C.F.R. § 1003.1(d)(3)(iv); *In re T-Z-*, 24 I. & N. Dec. at 176–77. The government argues that the BIA was not required to remand under *In re T-Z-*

because there were no "outstanding factual questions to be resolved." App. Doc. 38 at 9 n.1. We disagree. There is no evidence in the record regarding "the impact of his discretionary denial of asylum on [Mr. Thamotar's] ability to be reunited with his wife and minor child[ren]," *In re T-Z-*, 24 I. & N. Dec. at 177, or whether "reasonable alternatives" for family reunification in a third country are available, 8 C.F.R. § 1208.16(e). Because these factors *must* be considered per § 1208.16(e), without such evidence in the record, the BIA should have remanded to the Immigration Judge.[15] The BIA's failure to do so was manifestly contrary to law and an abuse of discretion.

The government also contends that remand is unnecessary because the BIA was authorized to, and did, review *de novo* whether Mr. Thamotar's case warranted a discretionary grant of asylum. *See id.* § 1003.1(d)(3)(ii). But the fact that the BIA reviews immigration judges' discretionary decisions *de novo* does not fulfill the agency's duty under § 1208.16(e) to reconsider the discretionary asylum denial if an applicant is subsequently granted withholding of removal. Here, the agency

---

[15] The government points out that after his first removal hearing, Mr. Thamotar submitted briefing on 8 C.F.R. § 1208.16(e) but presented the Immigration Judge with "no evidence or argument about hardship due to family separation." App. Doc. 38 at 8. However, the government does not dispute that after the Immigration Judge denied Mr. Thamotar asylum but granted him withholding of removal—triggering 8 C.F.R. § 1208.16(e)—the Immigration Judge was required to investigate outstanding factual questions pertaining to the § 1208.16(e) reconsideration. Indeed, Mr. Thamotar submitted this briefing *before* the Immigration Judge denied him asylum but granted him withholding of removal, and he has had no opportunity to submit additional evidence since the Immigration Judge issued his decision.

31

did not fulfill this duty. On remand from the BIA, the Immigration Judge must assess the impact of the asylum denial on Mr. Thamotar's ability to be reunited with his family, determine whether there are "reasonable alternatives available" for Mr. Thamotar's family to reunify, and then conduct the required reconsideration of the discretionary denial of Mr. Thamotar's asylum application. *Id.* § 1208.16(e). If either party elects to appeal the Immigration Judge's reconsideration, then the BIA's review will be *de novo*. *See id.* § 1003.1(d)(3)(ii).

## IV.    CONCLUSION

For these reasons, we grant the petition for review, vacate the BIA's decision, and remand to the BIA with instructions to remand to the Immigration Judge for reconsideration of the discretionary denial of asylum.

**PETITION FOR REVIEW GRANTED; VACATED AND REMANDED.**