[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11381

Non-Argument Calendar

_____

GURDEEP SINGH,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-264-794

_____

Before GRANT, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Gurdeep Singh, an Indian national, seeks relief from removal because opposition-party members twice beat and threatened him for putting up posters for his political party, and he fears further harm if he returns to India. Although those beatings were unfortunate, they were not severe enough to amount to persecution. Nor does the record compel us to conclude that his fear of more severe mistreatment upon return is reasonable. We therefore deny Singh's petition for review of the Board's denial of his application for relief.

## I.

Singh left Dasuya, a town in India's Punjab region, and after traveling through more than ten countries crossed into the United States without inspection. Within a month, immigration officers apprehended him and placed him in removal proceedings.

At an initial removal hearing, Singh conceded his removability but told the presiding immigration judge that he planned to apply for asylum, withholding of removal, and protection under the Convention Against Torture. But his lawyer did not file his relief application on time. The immigration judge decided that, because of the delay, Singh had abandoned any relief that he might have obtained, and thus ordered his removal to India.

Singh successfully moved to reopen his proceedings, and the immigration judge held an evidentiary hearing on the relief application.  There, Singh testified that he was twice attacked while he was volunteering for the Shiromani Akali Dal (Amritsar) Mann party—a party that advocates for a separate country for Sikhs like Singh.  The first attack, he said, occurred in April 2017 while he was hanging posters for the Mann party.  Some number of persons wearing shirts with a logo for the India National Congress party approached and tore down the posters.  When Singh protested, they began beating him.  His friend and nearby shopkeepers quickly came to his aid.  As the shopkeepers approached, the assailants told Singh that "it would be wiser" if he quit his party to join theirs—and then fled.

The beating did not deter him; ten to fifteen days later, he began volunteering for the party again.  The next few months passed without incident, but in July 2017, he was attacked again.  On Singh's way home from putting up posters, four persons approached him on motorbikes that bore a logo for the Bharatiya Janata Party (BJP).  The riders stopped him, began beating him with wooden sticks, and warned that he would "get killed" if he did not quit the Mann party.  This beating too was cut short when a vehicle approached; again, the assailants fled.

Both beatings left him with only minor injuries.  In his doctor's account, Singh received only a painkiller and some cream for swelling to treat a minor injury he received in the first attack. (In Singh's telling, he did not even receive treatment in April.)  As

for the second attack, it left Singh with multiple bruises and some injuries on his legs—injuries that again required only a painkiller and some cream to treat.

After the attacks, no one from either party came looking for Singh.  At the end of the second attack, however, the assailants had photographed him.  That frightened Singh's father enough to arrange for his son's travel to the United States.

Since his departure, Singh said, police officers and members of the Congress party and BJP began coming by his parents' home occasionally to ask for him.  But nothing had happened to his father, mother, or sister, all of whom support the Mann party.  And Singh had not heard of any other incident in Dasuya (or nearby) where members of the BJP or the Congress party had attacked any of the city's fifty to sixty Mann party workers.

After hearing this testimony, the immigration judge denied Singh's application for relief because, among other things, Singh had not established that the two attacks amounted to persecution, that his fear of persecution upon his return to India was well-founded, or that the Indian government would likely torture him. On appeal the Board determined that Singh had waived any challenge to the denial of protection under the Convention Against Torture, and agreed with the findings underlying the denials of asylum and withholding of removal.  This petition followed.

## II.

Singh—for the first time before this court—challenges the immigration judge's jurisdiction.  A challenge to the agency's jurisdiction is a challenge to our own; we cannot consider a petition for review of an order in a case that the agency lacked jurisdiction to hear.  See Perez-Sanchez v. U.S. Att'y Gen., 935 F.3d 1148, 1153 (11th Cir. 2019).  Despite Singh's failure to exhaust this challenge before the Board, then, we can—indeed must—consider it.  See id.

Singh contends that a defect in his notice to appear (a failure to specify an initial hearing time) deprived the immigration judge of jurisdiction.  Both 8 U.S.C. § 1229(a) and 8 C.F.R. § 1003.14, he says, vest jurisdiction in the immigration judge only upon filing of a fully compliant notice to appear.  In Perez-Sanchez v. U.S. Attorney General, however, we explained that neither provision creates a "jurisdictional rule."  Id. at 1154, 1157.  And a subsequent Supreme Court case that Singh relies on, Niz-Chavez v. Garland, does not undermine that holding.  141 S. Ct. 1474 (2021).  There, the Supreme Court decided only that a notice to appear needed to come in one document, not two.  See id. at 1480.  Nothing that it said transformed either § 1229(a) or § 1003.14 into a jurisdictional requirement.  We thus can hear Singh's case.

## III.

## A.

Singh primarily challenges the findings underlying the denial of his application for asylum and withholding of removal.  We

review those findings for substantial evidence. *See Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1285 (11th Cir. 2021). That standard is "highly deferential"; indeed, we cannot reverse a factual finding "unless any reasonable adjudicator would be compelled" to disagree with it. *Id.*; 8 U.S.C. § 1252(b)(4)(B). Where, as here, the Board adopted the immigration judge's opinion and added reasoning of its own, we review both the immigration judge's opinion and any further explanation offered by the Board. *See Thamotar v. U.S. Att'y Gen.*, 1 F.4th 958, 969 (11th Cir. 2021).

To establish asylum eligibility, an applicant must show that he "suffered past persecution or has a well-founded fear of future persecution" on account of a ground protected in the Immigration and Nationality Act—as relevant here, religion and political opinion. *Alvarado v. U.S. Att'y Gen.*, 984 F.3d 982, 988 (11th Cir. 2020) (quotation omitted); *see* 8 U.S.C. §§ 1101(42)(A), 1158(b)(1)(A). "Persecution is an extreme concept." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1353 (11th Cir. 2009) (quotation omitted and alteration adopted). More often than not, this Court has defined it in the negative: persecution is more than "a few isolated incidents of verbal harassment or intimidation," or than "[m]inor physical abuse." *Id.*; *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005). And here, the two isolated and brief beatings left Singh with only minor injuries—his treatment after the beatings was, at most, painkillers and some cream.

To be fair, persecution can occur "absent a serious physical injury" if the applicant suffers "repeated threats *combined with*

21-11381                Opinion of the Court                7

other forms of serious mistreatment." *Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1292 (11th Cir. 2021) (emphasis added). Singh's attackers, he testified, threatened him at each beating. But in the intervening months, he was never victim to any other mistreatment, let alone serious mistreatment. And no abuse or harassment followed the second beating. We therefore are not compelled to conclude that Singh was persecuted.

Nor are we compelled to conclude that his fear of future persecution is well-founded. To be so, there must be a "reasonable possibility" that Singh would be persecuted if he returned to India. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007) (emphasis omitted). Singh asserts that such a possibility exists, noting that the Mann party president and Canada had reported that party members had been detained and harassed for engaging in political protests and advocating for Sikh secession from India.[1] Yet

---

[1] Singh also contends that the immigration judge's failure to mention these documents and other country reports shows that he failed to give reasoned consideration to Singh's case. But an immigration judge need not "address each piece of evidence presented." *Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1294 (11th Cir. 2021). It need only "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it had heard and thought and not merely reacted to the issues raised and evidence presented." *Id.* (quotation omitted). The immigration judge's analysis of Singh's assertion of well-founded fear is brief. But nothing in the opinion makes us doubt, when we review the record, that we and the immigration judge "are, in substance, looking at the same case." *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1334 (11th Cir. 2019). The immigration judge thus gave enough explanation to enable our review of Singh's case. *See id.*

the U.S. government reports that the treatment of Sikhs generally, and of Mann party members by the Congress party, has "improved significantly" over time. It also cites no instance where BJP members abused Mann party members; instead, BJP abuses seem to be targeted at Muslims.

More important, nothing in the record supports the fear that Singh asserts: that on his return, the government and opposition-party members would hunt him down and persecute him for his political activity. None of the country reports—or even the Mann party president's letter—suggest that the government or any political party has recently sought out and punished Mann party workers for hanging up posters or other organizing efforts. All Singh can cite is his family's statement that some unidentified members of both parties and of the government had come by the home to ask after him. But no harm has befallen his family, who also supports the Mann party, or (to his knowledge) any other party worker in the city. We therefore uphold the finding that his fear of persecution upon return is not well-founded—and thus the Board's denial of his asylum claim.

As for Singh's application for withholding of removal, he needed to show that he "would 'more likely than not' be persecuted" upon his return. *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1375 (11th Cir. 2021). That standard of proof is "more demanding" than asylum's "'well-founded fear' standard." *Sanchez-Castro*, 998 F.3d at 1286. By failing to establish his eligibility for asylum, then, Singh "necessarily failed to establish

eligibility for withholding of removal." *Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1196 (11th Cir. 2021) (alteration adopted).

### B.

Singh also challenges the Board's summary dismissal of his claim for CAT protection as "waived," a decision we review for an abuse of discretion. *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1144–45 (11th Cir. 2010); 8 C.F.R. § 1003.1(d)(2)(i)(G). To avoid this "waiver," an alien must "specifically identify the findings of fact, the conclusions of law, or both," that he seeks to contest. *Lapaix*, 605 F.3d at 1145. "Passing references" to an issue will not suffice. *Id.*

Here, passing references are all Singh offered. His brief to the Board mentioned the Convention Against Torture just once, and made a single oblique suggestion that statements in the record showed that the Indian police had "coordinated actions to facilitate" his "persecution and torture." He never specifically contested the immigration judge's finding that there was "no evidence" that he "was tortured in India" or that "the official government of India" had "any interest" in torturing him on his return. The Board therefore did not abuse its discretion when it held that Singh had waived his claim for protection under the Convention Against Torture.

★   ★   ★

Singh's petition for review is **DENIED**.